[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' FIRST SPECIAL DEFENSE
The plaintiff, Kristin McDuff, was a student at East Lyme High School in East Lyme, CT. The defendant, Kathleen Tamborlane, had been providing the plaintiff with psychological counseling in accordance with her employment by the East Lyme Board of Education as a school psychologist for the East Lyme Public school system.
On or about January 6, 1995, the defendant received a telephone call from the plaintiff's mother, in which the plaintiff's mother divulged information regarding the plaintiff's involvement in the commission of a crime. The plaintiff alleges that said information was revealed to the defendant for the purpose of assisting the defendant in her treatment of the plaintiff.
Subsequent to said phone call, the defendant contacted David W. Miko, the vice-principal of East Lyme High School, and revealed the information provided to her by the plaintiff's mother. In turn, the vice-principal notified a police officer for the town of East Lyme.
As a result of the aforecited series of events, the plaintiff was placed under arrest and charged with a violation of Connecticut General Statutes § 53a-123 and a violation of Connecticut General Statutes § 53a-125a.
On February 24, 1998, the plaintiff filed an eleven count amended complaint against Kathleen Tamborlane, the East Lyme Board of Education, David W. Miko, Gerald M. Mistretta, Karl E. CT Page 8785 Scheibe and David Duff Chambers d/b/a Saybrook Counseling Center, for injuries and losses sustained from said arrest.
On March 2, 1998, the defendants filed their answer and special defenses to the amended complaint. The first special defense alleges that "[t]he injuries and losses of the plaintiff, if any, were caused in whole or in party by her own carelessness and negligence in that she committed larceny in violation of C.G.S. Sections 53a-123 and 53a-125a; and she failed to inform her mother that she considered her knowledge of the aforesaid crimes as confidential information; all of which she knew or should have known not to do."
On September 15, 1998, the plaintiff filed a motion to strike the defendants' first special defense along with a memorandum of law in support. On October 8, 1998, the defendants filed a motion in opposition and a supporting memorandum of law.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
The plaintiff argues that the fact that she may or may not have committed larceny is irrelevant for purposes of determining whether the defendants committed malpractice. The plaintiff also argues that she was not under a duty to notify her mother of the confidentiality of the communication made to her.
In opposition, the defendants argue that: (1) it is questionable whether information relating to the theft of property constitutes information regarding the plaintiff's diagnosis and treatment; (2) the plaintiff's conduct is relevant because it was the catalyst for all subsequent communications; and (3) the plaintiff had a duty to inform her mother that her knowledge of the crimes was confidential.
Pursuant to General Statutes § 52-146(c), a privilege is established for certain communications between a psychologist and CT Page 8786 a patient, and between a psychologist and a member of the patient's family.
General Statutes § 52-146 (c) provides in relevant part: "[I]n civil and criminal actions, in juvenile, probate, commitment and arbitration proceedings, in proceedings preliminary to such actions or proceedings, and in legislative and administrative proceedings, all communications shall be privileged and a psychologist shall not disclose such communications unless the person or his authorized representative consents to waive the privilege. . . ." (Emphasis added.) General Statutes § 52-146(c).
Communications is defined as "all oral and written communications and records thereof relating to the diagnosis and treatment of a person between such person and a psychologist or between a member of such person's family and a psychologist." General Statutes § 52-146(a)(3).
At the onset, the defendants question the applicability of the psychologist-patient privilege to information relating to the commission of a crime.
Usually, "except in a very limited number of situations, such as child abuse or molestation, disclosures of past criminal or harmful activity generally must remain confidential." (Emphasis added.) 2 D. Louisell, H. Williams, Medical Malpractice (1998) § 17A.04, p. 17A-11, citing Weisbeck v. Hess, 524 N.W.2d 363 (S.D. 1994); People v. Bass, 529 N.Y.S.2d 961 (Sup.Ct. 1988). The reason often cited for such a liberal interpretation of the privilege has been the need for frank disclosure by a patient in order to facilitate his diagnosis and/or treatment.
Since the psychologist-patient privilege runs only to the patient and is intended to protect the interests of a patient, 2 D. Louisell, H. Williams, supra, p. 17A-11, it follows that the communication of a patient's past criminal activity remains privileged whether the information is communicated by the patient or a member of his or her family.
Moreover, the defendants have not alleged that an exception to the psychologist-patient privilege should apply in the case at hand. In other words, the defendants have not alleged a "risk of imminent personal injury to the [plaintiff] or to other individuals or risk of imminent injury to the property of other CT Page 8787 individuals." General Statutes § 52-146c(c).
The defendants next argue that the plaintiff is contributorily negligent for her subsequent arrest because she: (1) informed her mother of the criminal activity without advising her of the confidential nature of the disclosure; and (2) committed the underlying crime.
In the present case, the plaintiff was under no obligation to inform her mother of the confidential nature of her communication in order to invoke the psychologist-patient privilege. The statute which bestows a privileged status to communications with a psychologist specifically includes those communications made by a patient's family member. Therefore, whether the plaintiff informed her mother of the confidential nature of the communication between them is irrelevant. It is the communication between the plaintiff's mother and the psychologist which is truly at issue. As to this communication, there is no statutory requirement that the plaintiff's mother inform the psychologist of the confidential nature of the disclosure before the privilege can be invoked.
In fact, "[i]t has been suggested that public knowledge of the ethical standards of the medical profession and widespread acquaintance with the substance of the Hippocratic oath's secrecy provision would be sufficient justification for a [family member's] belief that the physician had promised to keep confidential all information given [about] the patient." 20 A.L.R.3d 1113 § 2[b]
Hence, in the present case, the plaintiff's mother would naturally have assumed that Kathleen Tamborlane would regard her communication as confidential. Moreover, it would be reasonable for the plaintiff's mother to assume that as an average prudent reputable member of the [psychologist] profession, Kathleen Tamborlane would already be on notice of the confidentiality of communications made to her in her professional capacity.
The defendants also argue contributory negligence on the part of the plaintiff on the grounds that the plaintiff committed the underlying crime that she was accused of committing.
Whether the plaintiff committed the underlying crime is irrelevant for purposes of the malpractice action. The proximate cause of the malpractice action is the disclosure of privileged CT Page 8788 information by Kathleen Tamborlane. Here, there is no allegation that the plaintiff authorized Ms. Tamborlane to disclose said information by waiving the psychologist-patient privilege or that the plaintiff disclosed the subject communication to her mother even though she was aware that if faced with the disclosure Ms. Tamborlane would not keep it confidential. Therefore, it cannot be said that the plaintiff contributed to the subject disclosure by Ms. Tamborlane.
Based on the foregoing, the motion to strike is granted.
Mihalakos, J.