[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the Court as an Application for a Prejudgment Remedy filed by the Plaintiff.
The parties entered into an Ante-Nuptial Agreement on April 29, 1988. Thereafter, the parties married on May 1, 1988.
While the plaintiff reviewed the Ante-Nuptial agreement with her attorney several days before it's execution, she was not provided with the defendant's financial statement until the day of its execution. Her attorney was not present when she signed the Agreement. Accordingly, her attorney did not have the opportunity to review the defendant's financial statement. The Plaintiff filed a complaint for dissolution of the marriage in September, 1998. The Defendant filed an Answer and Cross Complaint seeking relief in accordance with the Ante-Nuptial Agreement.
In November, the Plaintiff filed an Application for a Prejudgment Remedy seeking to secure the sum of five million ($5,000,000.00) dollars. In the attached Affidavit the Plaintiff claimed: "Upon information and belief, the defendant has placed no assets in my name or in our names jointly so that in the event that he were to die before judgment enters in this case, I would receive no assets."
There are four questions before the Court.
First, given the automatic orders triggered by the institution of a dissolution action (see Connecticut Practice Book Section 25-5(a)), is the plaintiff barred from seeking an Application for a Prejudgment Remedy? The answer to this question is no. Under C.G.S. Sec. 46b-80, either spouse may make application for a prejudgment remedy. The promulgation of this Practice Book rule was not intended to render inoperative C.G.S. Sec. 46b-80 in dissolution matters, nor for that matter, may a rule of Court nullify a statutory remedy.
Second, is the relief sought by the Plaintiff within the ambit of a prejudgment remedy? The answer to this question is no.
"A prejudgment remedy is any "remedy that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment . . ." Fermont Division,CT Page 748Dynamics Corp. of America, Inc. v. Smith, 178 Conn. 393, 398. See also Conn. Gen. Statutes 52-278a(d).
The Plaintiff in this action seeks an order that the Defendant convey assets to the Plaintiff either individually or in joint names.
This is not the purpose of a prejudgment remedy. The purpose is to preserve the asset while the matter is being litigated, not to effectuate a transfer prior to a trial on the merits.
However, if, after the hearing on the Prejudgment Remedy application, the Court finds probable cause to sustain the validity of Plaintiff's claim (See Connecticut General Statutes Section 52-278(d)a.), the Court has the authority under C.G.S.52-278k to modify the request as may be warranted by the circumstances.
Third, in the absence of a valid ante nuptial agreement, is there probable cause to sustain the validity of the plaintiff's claim? The answer to that question is yes.
This Court held a two day hearing on the application.
The hearing in probable cause is not intended to be a trial on the merits. McCutcheon Burr, Inc. v. Bernam, 218 Conn. 512
(1991). The concern is "whether and what extent the plaintiff is entitled to have the property of the defendant held in the custody of law pending adjudication of the merits of that action." E. J. Hansen Elevator, Inc. v. Stoll, 167 Conn. 623, at 630-1 (1975). The plaintiff does not have to establish that she will prevail, only that there is probable cause to sustain the validity of the claim. New England Land Co., Ltd v. DeMarkey,213 Conn. 612 (1990) "Civil probable cause" such as will justify resort to a prejudgment remedy constitutes a bona fide belief in the existence of facts essential under law for the action and as would warrant men of ordinary caution, prudence, and judgment, under the circumstances, in entertaining it. OneFawcett Place Ltd., Partnership v. Diamandis Communications,Inc., 24 Conn. App. 524 (1991).
The task of the trial court is essentially one of weighing probabilities; that task requires the exercise of broad discretion. Dow Condon, Inc. v. Anderson, 203 Conn. 475 (1987). CT Page 749
After a review of the evidence, this Court concludes there is probable cause to sustain the plaintiff's claim, provided the Court further concludes that there is probable cause to find that the ante nuptial agreement is invalid.
Fourth, is there is probable cause to conclude that the ante nuptial agreement is invalid, and, by way of extension that the defendant's special defense will not be sustained? The answer to this question is yes.
In ruling on a prejudgment remedy, the court must evaluate not only the plaintiff's claim but also any defenses raised by the defendant, Haxhi v. Moss, 25 Conn. App. 16 (1991), since "a good defense will be sufficient to show there is no probable cause that judgment will be rendered in favor of the plaintiff" Augeriv. C. F. Wooding Co., 173 Conn. 426 at p. 429 (1977). The defense raised by the defendant was the existence of the Ante Nuptial Agreement. It then became the burden of the plaintiff to show that the ante nuptial agreement was invalid.
Under McHugh v. McHugh, 181 Conn. 482 (1980) and the cases which follow that decision, the test to determine the validity of an ante nuptial agreement is: (1) Was the contract validly entered into? (2) Do its terms violate statute or public policy? and (3) Are the circumstances of the parties at the time that the marriage is dissolved so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustices?
If this court finds probable cause that one of the essential tests of McHugh has no been met then there is probable cause to conclude that the Ante Nuptial agreement was invalid. By way of extension, such a finding results in the conclusion that there is probable cause that the defendant's special defense will not be sustained.
The Court's first inquiry, is to "ascertain whether the agreement complies with the ordinary principles of contract law and whether its terms and the circumstances surrounding its execution are such as to demonstrate that the parties were aware of their legal rights and their respective assets and liabilities, and proceeded by the agreement to alter those rights in a fair and voluntary manner." Salame v. Salame, No. 31 91 26 (Apr. 9, 1996) 1996 Ct. Sup. 3137, 3140. CT Page 750
To determine whether the contract was validity entered into, the Court must determine "whether the parties' waiver of their statutory rights was done in a `voluntary and knowing' manner. This requires a determination as to whether there has been full financial disclosure, which is essential to the upholding of an antenuptial agreement. . . . The burden is not on either party to inquire, but on each to inform." Colby v. Colby, No. FA95 0370560 (May 16, 1996) 1996 Ct. Sup. 4071-E, 4071.
As the Plaintiff did not have the Defendant's financial statement when she reviewed the Ante Nuptial Agreement with her attorney, the Court finds probable cause that the Ante Nuptial Agreement was not done in a voluntary and knowing manner, and is therefore not valid.
Accordingly, the plaintiff's application for a prejudgment attachment is granted as follows: The bank account of the defendant with Chase Bank, Account Number 5601-003691-5 is attached and garnished to the full amount of that account (as of 9/30/98 the amount was $7,787,394.00).
The Plaintiff is directed to prepare the necessary documents to effectuate this order and to present them to this Court.
FRANKEL, J.