[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (MOTION FOR SUMMARY JUDGMENT)
Pursuant to Practice Book § 17-44, et seq., the defendant New Haven Register has moved for summary judgment as to all counts of the plaintiffs' complaint and revised complaint, the latter dated December 13, 1999.
The plaintiffs have filed an action against the defendant for publishing articles that reported the arrest of the plaintiffs on kidnapping and assault charges. The articles were based on information and reports generated by law enforcement services. The plaintiffs argue that the article is false except for the reporting of the plaintiffs' names and addresses.
The defendant argues that it is entitled to judgment as a matter of law because: (1) the article is entitled to the "fair reporting privilege; and/or (2) the plaintiffs failed to seek a retraction pursuant to General Statutes § 52-237[1], and cannot prove, either malice or special damages.
The plaintiff Mackowski alleges that "on January 26, and January 27, 1998, the defendant published one or more articles in which the plaintiff. . . . was accused of assaulting and kidnapping. . . .", and that "the said statements were false." The plaintiff Alfano in a separate Count Two, alleges the same. An inspection of the plaintiffs' responses to the defendant's requests for production and interrogatories reveals that there is one newspaper article in question, and that is an article printed by the New Haven Register on January 26, 1998, which reported the arrests of the plaintiffs. A second article regarding the plaintiffs' arrests was printed by the Connecticut Post newspaper on January 27, 1998. The Connecticut Post is not a defendant to this action, and therefore, the court will limit its review only to the New havenRegister article of January 26, 1998. CT Page 12263
 I
"A Motion for Summary Judgment is designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party." HertzCorp. v. Federal Ins., Co., 245 Conn. 374, 381, 713 A.2d 820 (1998). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any issues exist. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Hertz Corp. v. Federal Ins. Corp., supra, 245 Conn. 381. "The opposing party must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Id. "A material fact is a fact which will make a difference in the result of a case." Suarez v. Dickmont Plastics Corp., 229 Conn. 99,639 A.2d 507 (1994). The test used by the court is to determine if the moving party would be entitled to a directed verdict if the same set of facts were presented at trial. Connell v. Colwell, 214 Conn. 242,246-47, 571 A.2d 116 (1990). A directed verdict is properly rendered if a trier of fact cannot reasonably and legally find in any fashion other than that directed. Santopietro v. New Haven, 239 Conn. 207, 225,682 A.2d 106 (1996).
Summary judgment is appropriate in defamation cases involving the media, where the prompt resolution of litigation is necessary to prevent the chilling of free speech and freedom of the press. Woodcock v. JournalPublishing Co., 230 Conn. 525 (Berdon, J., concurring); Strada v.Connecticut Newspapers, Inc., 193 Conn. 313, 477 A.2d 1005 (1984);Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 132,438 A.2d 1317 (1982).
The plaintiffs do not dispute that they were arrested for charges related to kidnapping, assault and possession of marijuana. They additionally, do not dispute that the references to "violent acts" against the victim, contained in the New Haven Register newspaper article of January 26, 1998, are based on a State of Connecticut Department of Public Safety State Police report, dated January 24, 1998, bearing State Police Case Number "F98-026229," a copy of which has been furnished to the court by the defendant. Said police report contains a statement of the victim, which has been signed by the victim. All parties, hereto, agree that on the same day that the article appeared in the defendant's newspaper, the charges against the plaintiffs were dismissed in court. Neither plaintiff expended any monies to hire an attorney to defend them CT Page 12264 on the criminal charges. The plaintiff Mackowski paid the sum of $1500 to a bail bondsman to secure the release of himself and Alfano from police custody. The plaintiff Alfano expended no money to secure his release. Neither plaintiff demanded a retraction from the defendant pursuant to General Statutes § 52-237. The plaintiffs, also do not dispute that the Register article appeared in its morning editions, prior to the criminal charges being dismissed in court, later on the same day. The plaintiffs also do not dispute the defendant's contention that it subsequently published another newspaper article reporting the plaintiff's position that the victim had fabricated the story that had resulted in their arrest by the Connecticut State Police.
The plaintiffs in filing their actions against the defendant argue that had the defendant exercised reasonable care prior to publishing the statements of the victim contained in the police report, "the defendant would have known the statements were untrue," and that the statements were "defamatory per se." The plaintiff's also allege that the defendant in the exercise of due care "should have known at the statement would cause the plaintiff's emotional distress which could lead to physical injury." The plaintiffs argue that the defendant should have made an effort to contact the plaintiffs or otherwise investigate the accuracy of the allegations before publishing them.
 II
The court first reviews the defendant's claim that the plaintiff's failure to request a retraction of the defendant's newspaper article pursuant to General Statutes § 52-237 provides:
 "In any action for a libel the defendant may give proof of intention; and unless the plaintiff proves either malice in fact or that the defendant, after having been requested by him in waiting to retract the libelous charge, in as public a manner in which it was made, failed to do so within a reasonable time, he shall recover nothing but such actual damage as he may have specially alleged and proved."
The phrase special damages in § 52-237 means actual pecuniary losses, by contrast to the concept of general damages, which may, in appropriate cases, include general harm to reputation, injured feelings or mental anguish. Holbrook v. Casazza, 204 Conn. 336, 360, 528 A.2d 774
(1987), cert. denied, 484 U.S. 1006 (1988); Monczport v. Csongrodi,102 Conn. 448, 452, 129 A.41 (1925); Miles v. Perry, 11 Conn. App. 584,600-01, 529 A.2d 199 (1987). The plaintiff Mackowski's only pecuniary CT Page 12265 loss claimed, is the fee he paid to the bail bondsman, while the plaintiff Alfano does not claim a pecuniary loss. The bondsman's fees do not qualify as special damages, as they were incurred as a result of Mackowski's arrest, not the defendant's publication of an article reporting the arrests of both plaintiffs. "To recover special damages, the plaintiff must prove that he suffered economic loss that was legally caused by the defendant's defamatory statements, even where the defamation is per se." "De Vito v. Schwartz, 66 Conn. App. 228, 238,784 A.2d 376 (2001); See 3 Restatement (Second), Torts § 622 (1977).
Absent special damages, the plaintiffs in order to prevail, must prove that the defendant published the article with malice-in-fact." "Malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive." Bleich v. Ortiz,196 Conn. 498, 504, 493 A.2d 236 (1985); See, e.g. Proto v. BridgeportHerald Corporation, 136 Conn. 557, 564, 72 A.2d 820 (1950); Corsello v.Emerson Bros., Inc., 106 Conn. 127, 132, 137 A.390 (1927); Haxhi v.Moss, 25 Conn. App. 16, 19, 591 A.2d 1275 (1991). Connecticut courts have described the "malice-in-fact" standard as requiring proof that the statement "was . . . known to be false,' or that it was otherwise made by the defendant with "entire indifference whether [it was] true or false. . . ." Haxhi v. Moss, supra at 19-20. The defendant properly argues, therefore, that the term "malice in fact" as used in General Statutes § 52-237 is synonymous with the term "actual malice." The substance of both the actual malice and malice in fact inquiries is the same: did the defendant act with subjective knowledge that a statement was false or with reckless disregards or entire indifference to whether the statement was true or false. St. Amant v.Thompson, 390 U.S. 727, 731 (1968); Woodcock v. JournalPublishing Co., supra at 537; See also Brown v. K.N.D. Corp.,205 Conn. 8, 10, 529 A.2d 1292 (1987).
The plaintiffs have not submitted any evidence that would establish the defendant's subjective knowledge or awareness that the victim's statements to the police authorities were false at the time the defendant published its newspaper article. In reviewing the plaintiff's responses to the defendant's requests for production and interrogatories, the court notes that the plaintiffs admit they were arrested for the charges listed in the defendant's article. They do not deny that references in the newspaper relating to "violent acts . . . carried out "against the victim; are contained in a report to the Connecticut State Department of Public Safety, Division of State Police, made at the time of the incident. Both plaintiffs admit that the defendant's article was based on law enforcement sources and that the defendant's article was published prior to the dismissal of criminal charges against the plaintiffs. CT Page 12266 Lastly, both plaintiffs admit they did not seek a retraction of the article from the defendant.
 III
The defendant New Haven Register additionally argues that its newspaper article was privileged under the "fair report" doctrine because it accurately reported the basis of the plaintiff's arrests. The court agrees.
The privilege enjoys recognition in jurisdictions across the country and protects the public's "strong interest in receiving information about what occurs in official proceedings and public meetings that it may oversee the performance of public officials and institutions." 1 Sack on Defamation, § 7.3.2 at 7-16, 7-21 (3rd Ed. 2001). See also Cianciv. New Times Pub. Co., 639 F.2d 54, 67 (2d Cir. 1980); Doe v. Kohn, Nast Graf P.C., 886 F. Sup. 190, 194 (E.D.Pa. 1994); Restatement (Second) Torts, § 611.
The plaintiff argues that there is no authority in Connecticut for the so-called "fair reporting privilege and that no Connecticut court has even adopted such a privilege. The plaintiff contends that the case ofMiller v. News Syndicate Co., 445 F.2d 356 (2d Cir. 1971), which is cited by the defendant, does not bolster the defendant's position, as the decision is limited to a "fair and accurate report of judicial and other official proceedings" and not, as in the instant case, to an out-of-court accusation by a victim. The court disagrees.
In Miller, the basis of the plaintiffs' complaints is an article which appeared in the New York Daily News describing the arrest of five persons, including Miller, on an indictment which alleged participation in a large drug smuggling syndicate. Miller was a resident of Orange, Connecticut. Miller complained that the article contained material that was "fake, malicious and defamatory." He further alleged that he demanded that the Daily News retract the article, but they refused to do so. The United States District Court for the District of Connecticut granted the defendant's motion for summary judgment finding that under General Statutes § 52-237 (1949 Rev.) Miller's request for a retraction, eleven months after publication of the article, was unreasonably late, and that his inability to prove malicious publication and his failure to allege and prove special damages prevented any recovery. Judge Blumenthal of the District Court, in granting summary judgment, also found that the article was conditionally privileged because it was "a fair and accurate report of judicial and official proceedings" and "fair comment on a matter of public interest." He found that the article did not violate the CT Page 12267 plaintiffs' right to recovery because it was protected by the defense of "newsworthiness." In affirming Judge Blumenthal, the United States Court of Appeals, Second Circuit stated that the Daily News based its story on reliable sources, which included interviews with law enforcement officials, more particularly, U.S. Customs agents. Id. at 357-58. "On the whole, the event was newsworthy, there was no lack of checking of official sources, and any deviations from or embellishments upon the information obtained from those sources was minuscule." Id. at 358. "There was no showing of facts from which a finding could be made, must less a showing of clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 358; Rosenbloom v.Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 28 L.Ed.2d 296 (1971). The holding in Miller applies to the instant matter.
An arrest by a law enforcement officer is an official action. A report of the fact of the arrest and of the criminal charge made by a law enforcement officer and of the contents of an arrest warrant or arrest report are within the fair report privilege. Restatement (Second) Torts § 611, cmt.h.
Accordingly, for the reasons set forth herein, the defendant New HavenRegister's motion for summary judgment as to all counts of the plaintiffs' Complaint and Revised Complaint is hereby granted.
The Court,
Arnold, J.